IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NIGEL O'NEAL,<br><br>　　　　　　Plaintiff,<br>　vs.<br>VICKI PIKE, et al.,<br><br>　　　　　　Defendants. | Case No. CIV S-01-0461 JKS P<br><br>O R D E R |

**INTRODUCTION**

　　　　Plaintiff Nigel O'Neal, a state prisoner serving a California state prison sentence, sues various correctional officers at Mule Creek State Prison, alleging they violated his constitutional rights when he was housed there. O'Neal alleges that he has diagnosed foot problems that require special shoes and that failure by responsible correctional officials to accommodate his medical needs rises to the level of conscious indifference in violation of the United States Constitution. *See* 42 U.S.C. § 1983.

　　　　Currently pending before the Court is the State's motion for summary judgment. Docket No. 99. The State has additionally filed several declarations to support its motion for summary judgment. *See* Docket Nos. 101 (Decl. of S. Lusich); 102 (Decl. of G. Douglas); 103 (Decl. of T. Baillie); 104 (Decl. of V. Pike). O'Neal opposes the State's motion, Docket No. 113, and has filed a statement of "genuine issues" of fact as well as a personal declaration, *see* Docket Nos. 114 (Stmt.); 115 (Decl. of N. O'Neal). This Court has jurisdiction pursuant to 28 U.S.C. § 1343.

1

**FACTUAL AND PROCEDURAL BACKGROUND**

This suit is related to O'Neal's allegations that Defendants failed to treat and accommodate his foot problems. By order of this Court, O'Neal's third amended complaint was limited to his allegations against Defendants V. Pike and Dr. G. Douglas. Pike worked in the prison's clothing room as a Materials and Store Supervisor I. Docket No. 104 at 1. O'Neal alleges that on repeated occasions, Pike failed to give him or order his medically prescribed shoes even after he presented her with various medical chronos showing that he was entitled to the shoes. Docket No. 68 at 3–5, 7–8, 11. He accuses Douglas of failing to prescribe him shoes necessitated by his condition after Douglas examined him. *Id*. at 4. The State moves for summary judgment to dismiss O'Neal's claims against both Defendants, arguing that the claims fail to outline a violation of the Eighth Amendment and that, in the alternative, Defendants are entitled to qualified immunity.

**DISCUSSION**

The standards for summary judgment are well settled. Federal Rule of Civil Procedure 56 dictates that "[a] party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may . . . move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof." Fed. R. Civ. P. 56(a); *see also* Fed. R. Civ. P. 56(b) (providing the same standard for parties defending a claim). Summary judgment is appropriate if the Court finds that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court will construe all evidence and draw all evidentiary inferences in favor of the nonmoving party. 10A Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 2727, at 459 & n.5 (3d ed. 1998) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970)).

A dispute over a "genuine" material fact exists if the evidence would allow a reasonable fact-finder to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48. The nonmoving party may defeat the summary

ORDER

judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). However, mere allegations of factual dispute, without more, will not defeat an otherwise proper motion. *Angel v. Seattle-First Nat'l Bank*, 653 F.2d 1293, 1299 (9th Cir. 1981) ("A motion for summary judgment cannot be defeated by mere conclusory allegations unsupported by factual data.").

To make a claim, O'Neal must show that Defendants exhibited "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Such a showing is sufficient to demonstrate the "unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Id*. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)) (internal quotation marks and citation omitted). The Constitution "does not necessitate comfortable prisons," *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)), nor is the Eighth Amendment a mandate for "broad prison reform" or excessive federal judicial involvement, *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982). However, the Eighth Amendment does not permit inhumane conditions, and prison conditions are subject to scrutiny under its provisions. *Farmer*, 511 U.S. at 832.

The United States Supreme Court has outlined a two-part test to determine if prison officials have violated a prisoner's rights under the Eighth Amendment:

> [A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious[;] a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities. . . . The second requirement follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment. To violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind.

*Farmer*, 511 U.S. at 834 (citations and internal quotations omitted); *see also Wilson v. Seiter*, 501 U.S. 294, 299–300 (1991) (discussing subjective requirement); *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (discussing two-part test); *Osolinski v. Kane*, 92 F.3d 934, 937 (9th Cir. 1996) (same); *Wallis v. Baldwin*, 70 F.3d 1074, 1076–77 (9th Cir. 1995) (same); *Allen v. Sakai*, 48 F.3d 1082, 1087 (9th Cir. 1994) (same).

ORDER

With regard to the first requirement, "[t]he circumstances, nature, and duration of a deprivation of [shelter, food, clothing, sanitation, medical care, and personal safety] must be considered." *Johnson*, 217 F.3d at 731. "The more basic the need, the shorter the time it can be withheld." *Hoptowit*, 682 F.2d at 1259. Deprivation of basic necessities for even brief periods can constitute a violation whereas more moderate deprivations must be more lengthy or ongoing. *Johnson*, 217 F.3d at 731–32.

As to the second requirement, the relevant state of mind is "one of 'deliberate indifference' to inmate health or safety . . . ." *Farmer*, 511 U.S. at 834. To show deliberate indifference, the inmate must prove that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. "Thus, *Farmer*[] requires an inmate to show that the official knew of the risk *and* that the official inferred that substantial harm might result from the risk." *Wallis*, 70 F.3d at 1077. The "prison official need not have acted 'believing that harm actually would befall an inmate; it is enough that the official acted . . . despite his knowledge of a substantial risk of serious harm.'" *Id*. (quoting *Farmer*, 511 U.S. at 842) (omission in original). The question of the official's knowledge is a question of fact. *Farmer*, 511 U.S. at 826.

As to Defendant Douglas, the State's argument, stated simply, is that the alleged conduct does not violate the Eighth Amendment. The Court agrees. The record reflects that O'Neal saw Douglas on several occasions. *See* Docket Nos. 106 at 25–30. Douglas in turn prescribed cortisone cream and referred O'Neal to a podiatrist. Docket No. 102 at 2; 106 at 25. O'Neal's chief complaint with Douglas's treatment is the podiatrist referral when O'Neal requested a medical chrono for "soft shoes." Douglas explains that because of the influx of inmates requesting soft shoe chronos—an influx that Douglas claims prison custody staff attributed to gang affiliation and smuggling contraband—medical staff referred all such requests to a contract podiatrist. Docket No. 102 at 2. O'Neal now objects to the referral, claiming that there is no such policy restricting Douglas's ability to issue the medical chrono for soft shoes himself and that the referral forced

ORDER

O'Neal to wait needlessly for the chrono and the eventual receipt of the shoes. Docket No. 113 at 3–9.

The referral policy, to which O'Neal points in trying to create a triable issue of fact, is irrelevant. Even assuming the policy did not exist, O'Neal's claims still fail. First, Douglas was not a specialist in podiatry. Indeed, he has no special training at all in podiatry, making a referral to a medical doctor with that specialty reasonable. Docket No. 102 at 2. O'Neal essentially admits as much in stating that his medical condition "was beyond the medical expertise" of Douglas and that "'Plaintiff' is not having a 'difference of opinion with 'Defendant' Douglas, but a qualified specialist has reached a medical conclusion in a medical field which 'Defendant' Douglas is not qualified." Docket No. 113 at 7, 9. It is hard for the Court to see how Douglas could have possibly been indifferent to medical needs in which he had no special training to diagnose in the first place. Further, it was O'Neal himself that requested to see the podiatrist; a request that Douglas granted each time that he saw O'Neal. Docket No. 106 at 25.

Second, with regard to the delay in seeing the contract podiatrist, Douglas states that as a result of his examinations of O'Neal and based upon his medical training, experience, and judgment, he "could not observe any significant foot problem or anything that would warrant expedited care." Docket No. 102 at 2. Clearly, O'Neal disagrees with Douglas's assessment that he did not warrant expedited care. But Douglas was not indifferent to O'Neal's condition—Douglas did not refuse to treat O'Neal or refuse to allow him to see a doctor whose experience and training would allow him to more properly assess O'Neal's medical needs. Instead, Douglas referred O'Neal to the doctor that O'Neal requested to see in the first place and treated the symptoms with cortisone cream.

In short, O'Neal's claims allege one of two possibilities. Either Douglas was negligent in his treatment or his treatment constituted a difference in medical opinion—his opinion and that of the contract podiatrist. In either case, O'Neal's claims fail as a matter of law. *See Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) (holding that a difference in medical opinions is

ORDER

insufficient to describe an Eighth Amendment violation); *see also Mayfield v. Craven*, 433 F.2d 873, 874 (9th Cir. 1970) ("[A] difference of opinion between a prisoner patient and prison medical authorities as to what treatment is proper and necessary does not give rise to a claim under [§ 1983]."). Douglas will be dismissed with prejudice from this case.

As to Defendant Pike, O'Neal's claims fail as well. O'Neal accuses Pike of failing to give him soft shoes on a number of occasions, even after he presented her with valid medical chronos for the shoes, both from his former institution, Folsom State Prison, as well as Mule Creek State Prison. Docket No. 113 at 7–16. But he ignores the State's argument that it was not Pike who was responsible for getting the shoes for O'Neal. Pike was a Materials and Store Supervisor I. Docket No. 104 at 1. In her capacity, she received and stored inventory, issued goods such as inmate clothing, exchanged laundry, and distributed clothing, such as inmate shoes. *Id*. at 1–2. What she was not responsible for was processing medical chronos. Instead, that job is tasked to the Materials and Store Supervisor II, who upon receipt of the chrono from the medical department, submits the request for soft shoes. *Id*. at 2; 103 at 2. O'Neal admits that these facts regarding the procedure are undisputed. Docket No. 114 at 5–6. Thus, whether there was a valid policy that did not credit medical chronos from other institutions or whether Pike was presented with a valid medical chrono is irrelevant because according to the uncontroverted facts, she had no authority to obtain the shoes in the first place.

As the State points out, O'Neal's allegations must describe with specificity the direct link between a particular defendant as well as how the defendant's actions actually and proximately caused his injuries. *See Leer v. Murphy*, 844 F.2d 628, 633–34 (9th Cir. 1988). In *Leer* a prisoner sued individual prison officials for failing to prevent him from being stabbed by another inmate. *Id*. at 630–31. In describing the link necessary to justify allowing such claims for damages to proceed, the Ninth Circuit explained that the focus must be

> on whether the individual defendant was in a position to take steps to avert the stabbing incident, but failed to do so intentionally or with deliberate indifference. In order to resolve this causation issue, [courts] must take a very individualized approach which accounts for the duties, discretion, and means of each defendant.

ORDER

*Id*. at 633–34. So too must this Court examine O'Neal's claims against Pike—an examination that the Court finds dispositive. If Pike's duties did not include responsibility over ordering the soft shoes, then she could not have been the proximate cause of O'Neal's injuries.[1] If in contrast Pike had the shoes in her possession but unjustifiably refused to give them to O'Neal, then she could have been the proximate cause of O'Neal's injuries and his allegations would have more force because Pike's responsibilities included notifying inmates when the shoes arrived and distributing them. *See* Docket No. 103 at 2.

In reaching this conclusion, the Court is mindful of the problem that can occur in prisoner litigation wherein prison officials each point the finger elsewhere, creating a situation where a prisoner, who is likely proceeding on limited information, is unable to point at which official specifically violated his rights. Such situations create the fear of leaving a prisoner remediless and may be likened to the venerable case on proximate cause of *Summers v. Tice*, 199 P.2d 1, 4 (Cal. 1948). The Court is satisfied that such is not the case here because the fundamental problem in such cases is apportioning fault among guilty parties. Here, it is clear that O'Neal's facial allegations fail as to Pike because there is no evidence that she was even among the alleged guilty parties. In other words, there is no fault to apportion. Accordingly, Pike will be dismissed with prejudice from this case.

/////

/////

/////

---

[1] Proximate cause is a legal term of art and means simply "the limitation which the courts have placed upon the actor's responsibility for the consequences of the actor's conduct. . . . As a practical matter, legal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability." *Black's Law Dictionary* 234 (8th ed. 1999) (quoting W. Page Keeton, at al., *Prosser and Keeton on the Law of Torts* § 41 (5th ed. 1984)). Generally, proximate cause is a question of fact, making summary judgment inappropriate. *Lieberman v. Matson Navigation Co.*, 300 F.2d 661 (9th Cir. 1962). However, as here, "[i]t becomes a question of law if the proof is insufficient to raise a reasonable inference that the act complained of was the proximate cause of the injury." *Rexall Drug Co. v. Nihill*, 276 F.2d 637, 645 (9th Cir. 1960).

ORDER

**IT IS THEREFORE ORDERED:**

The motion for summary judgment at **Docket No. 99** is **GRANTED**.

Dated at Anchorage, Alaska, this  5   day of July 2005.

/s/ James K. Singleton, Jr.<br>
**JAMES K. SINGLETON, JR.**<br>
United States District Judge